Good morning, your honors. Mayo Ashley in defense of defendant appellant Demetrius Warren. Your honors, the primary argument that I have here this morning is the way that the court and the parole officer imposed the four sentence for point enhancement for Mr. Warren's participation in this particular case. He was sentenced to 24 months plus at the top of the guideline range, which is the guideline range for the four level enhancement under 3B1.1. The four point subparagraph A was 97 months at the top, which is what the judge gave him. If the offense level, even given the argument that perhaps he should have got a two point enhancement, even given that the offense level would have been 25 instead of 27 and you would have a 63 to 78 month range, that's a difference of 19 months. If you said, well, he shouldn't have any points, that the two point enhancement doesn't even count, then you're down to 51 to 63 months. And the point here with the two cases that the court has asked us to consider, the Syrox case, that was where Syrox and his office manager apparently colluded. The district court said that she was, I believe it was, she was in it up to her ears. In the Syrox case, the court determined that she was not an unknowing facilitator, that she understood what was going on. Interesting enough, a Syrox guideline at 97 to 120 months, 121, I'm sorry. And he got 97, which is the bottom end. Mr. Warren got the top end of it. And in the Cyphers case, the district court in the Lewis case, this court said that the district court had made no finding that the women that were involved even knew or suspected the scheme in effect. As to Bausch and Haidt, you've got at least some proof in the record, correct? I'm sorry? As to Bausch and Haidt, you have some proof in the record that they knew they were involved, right? Right. Okay. So it just comes down to basically whether there's enough, in your view, with respect to Scott and Azure to justify the enhancement, correct? No, I do not believe so, Your Honor. Two of the women, you have to have five participants, of course. And the girls, the four, if you will, straw buyers, all were charged. But two of those counts were dismissed, Your Honor. The one, I believe it was straw one, she moved, I'm sorry, he moved from California to Great Falls to live with her. And she brought the gun, apparently, for protection. The straw two also was involved with Mr. Warren. I think that perhaps the key here is, given ciphers and Syrox, that the girls, even if they falsely signed the AFT form, they were not part of the conspiracy. They were not like the employees in the ciphers case, where the employees even admitted to the grand jury that they knew what was going on. They knew they were taking false samples and that sort of thing. Counsel? Yes, ma'am. As to Bausch, she was told, after she purchased the gun, what he was going to do with it. And as to Hite, she was asked to get the guns back. They'd been seized by, I guess, the Nevada police. Now, does that then make them knowing participants? Well, I don't think she knew at the time that she purchased the guns. And there were a couple of the girls that were involved that, quite frankly, got upset with Mr. Warren's courting of other women and told the police. And I think that that at least gives some question as to their veracity or not. Well, if they later got disenchanted, that's not going to help them, if they knew at the time what he was going to be doing with them. But it looks from the record to me that perhaps there's no evidence until after the fact that they learned about it. And is that adequate? That's correct. That's my impression, Your Honor. Yes. Well, my question is, knowledge after the fact, is that going to make them knowing participants? I don't believe so, Your Honor. No. That's my impression. I think what we've got here is, and as I said in my brief, I had a similar case. And had the government given him a two-point enhancement, I might not even be here. But I had a client who had some people steal company checks, had another person falsify those checks on a computer, had still another person sign those checks or forge them, actually, and had several other people who cashed the checks. Now, that's my impression of what at least a four-point enhancement, maybe even a two-point enhancement, that's what it's intended to cover, is those kinds of crimes. The commissioned background note to 3B1.1 says that the adjustment upward should increase with both the size of the organization, which is arguably less than five, and the defendant's responsibility. The, perhaps, argument, the defendant here did intend to get guns and sell them or whatever. He claimed he was a collector. But I don't think that that particularly applies, Your Honor. The, as an example, a two-level enhancement, two-level, not four. In Lopez-Solais 254 Fed Appendix 621, the person contacted dealers, dispatched runners, set prices, negotiated amounts, made decisions regarding delivery and collected money. And in the Ding case, which is 282 Fed Appendix 511, the defendant was a CEO of a company, and all of the employers were conspirators. I think that distinguishes this case from the normal four-level. I'm arguing that it shouldn't, if anything, should have been a two-level. I'm not even convinced that the two-level enhancement was necessary in this case, Your Honor. Mr. Ashley, Ms. Ashley, what's your response to the, I think the government's primary contention is that, in this sentence here, on page 16 of the red brief, additionally, the four straw purchasers were criminally culpable participants as they were charged in separate indictments, as noted in the PSR. Why isn't that sufficient to make him, you know, an organizer? If they were criminally, you know, criminally culpable? Well, Judge DeSima, my argument there is that the two, they criminally charged all four girls, none of whom knew what was going on at the time. What do you mean? I mean, they knew they were making false statements, didn't they? They knew that they were, they were buying the guns. They were using their names. They were buying it for him. They knew that. Well. Well, why do you say they didn't know what was going on? Well, maybe they didn't know about the wider conspiracy, but they don't have to know about the conspiracy in order to be criminally culpable, do they? No, that's true, Your Honor. Well, if they're criminally culpable, then why can't Mr. Warren be charged as an organizer? Partially because the women purchased the guns, apparently, for self-protection. They didn't realize that Mr. Warren was getting the guns. I'm not even sure that he knew it at the time, Judge, that he was getting the guns to supposedly sell. I think that became a sort of a byproduct. Do they have to know that he was getting it to sell? No. Well, in other words, even without that knowledge, you know, they were criminally culpable, weren't they, because they made false statements in purchasing a firearm in violation of 922 or 924, right? And my argument there, Judge, is that as so often happens in these cases, I think that there was an overcharge here, that the girls were charged so that they would appear to be criminally culpable, and when they finished the discovery, they were dismissed because they knew they couldn't prove those charges yet. Did they dismiss as to all four or as to two? Two, Your Honor. Yes. Yeah. Yeah.  Thank you, Counsel. Just a second. Did you have another question? Yeah.  Thank you. Ms. Stewart. Good morning. Paulette Stewart for the United States. To answer the question that you ended with, Defense Counsel, all the straw purchasers were indicted. All the straw purchasers admitted their roles, admitted that they lied on the forms, that, yes, there were relationships involved, there was gut, there was drugs that Mr. Warren enticed the straw purchasers with, there was money. They were all indicted, and that's just the four straw purchasers. Let's focus on the two, I think, that are at issue, probably Scott and Azure. Can you tell me exactly what the evidence and the record shows as to those two straw purchasers? You bet. Scott was actually in a relationship with Warren, and she actually bought a total of six firearms during the course of their relationship. She also went to California with Mr. Warren, and one of the things that she noted when she went to California with Mr. Warren was that he would go out and basically leave her in California and come back, and that is covered in the supplemental excerpts of record on page six. Where is the evidence as to those two that either of them was aware that the firearms were going to be used in a trafficking scheme? You know, I think that is going to be, at least with Scott, it's going to be inferred with the trip to California. I don't think at the time that she made the false statements, we can say she knew absolutely that he was trafficking the guns. I think once she got to California is when she had a good idea as to what was going on, but she was not allowed to be privy to those contacts and to his conduct. Okay, so she didn't know, and it only takes, because it's a numerically-based enhancement, it only takes one to be knocked out to destroy the enhancement. Let's assume for the moment that she didn't know that guns were going to be used in a trafficking scheme. Is that the end of it, or is, in fact, can you impose the enhancement without that knowledge? You know, I think we get there actually both ways. I think there are still five other people that he recruited, because he recruited everybody else that was involved with this. I mean, he, as the district court calls him, he was the brainchild. He was the one who actually ran this entire show. He's the one who recruited his cousin, who was a co-defendant. He was the one who recruited his then-girlfriend at that time, which was Evans. He's the one who recruited Azure, Hyatt, and Bosch. So, I mean, we're still at five, and he is basically, I guess, as the district court. Are you conceding or agreeing in response to Judge Thomas's question that if she didn't know about the conspiracy, then she can't be counted as one of the five? No, because she's still criminally culpable, Judge Teshima, which I guess was part of your question is all of these participants and all of these people we're talking about were criminally culpable. It's in dismissed counts according to the plea agreement, but Warren was charged with aiding and abetting every single straw purchaser in these firearms transactions where these girls lied for him and purchased him firearms. Well, didn't this have to relate to the trafficking? The straw purchasers' straw purchases did relate to the trafficking because one of the guns that was purchased by Ms. Scott did get trafficked in California. But she didn't know that that was going to happen? She did not absolutely know. That's not any different than what we'll call the hub and spoke conspiracy, right? In other words, each conspirator at the end of each of these spokes doesn't know anything about what's going on with the others. No, but he's the cog in that wheel. I mean, he's the center of that wheel that basically runs and turns the circle. Yes, well, I think we all agree with that, but the question is, under the guidelines, what level of knowledge is required of these participants in order for them to be counted? Do they need to know the scheme or not? I think you're saying that they don't. That's correct. And what's your best case that says that? Really, I guess one of the cases that I looked at was one of the cases you asked us to look at on Thursdays with ciphers, where it says that the court may look at the relevant conduct, look at the whole picture. And I think in this case, I think the sentencing court did that. He looked at the whole picture and said, if you step back and look at this whole picture, everybody knew what was going on and Warren was driving the whole machine. I mean, to be fair, in the record, at least as to two, there's pretty minimal, if any, evidence that they were aware of the conspiracy, trafficking conspiracy. I mean, I think that's a fair statement of the record. And then the question for us is, is that important? Is that the end of the case, or is it relevant at all that they didn't know everything? I don't think it's relevant that they knew everything. I don't think in a conspiracy, every player has to have knowledge of what everybody else in the conspiracy is doing. But they have to have knowledge of the conspiracy, don't they? Yeah, they do have to have knowledge of what's, at least that something is out there. Yes, Your Honor. So you had, you counted, if we leave Scott out of it, you count Azure, Evans, and what's your best evidence on Azure? Azure was the purchaser of the rifle who he basically paid, excuse me, paid to purchase the 9mm rifle. He's the one who went and picked that out. He's the one who paid for it. She got to, of course, go fill out the form. And then when she went and actually picked up the firearm, he's the one who took it, already had ammunition for it. He was basically ready to go. And then, quite frankly, the only thing that stopped the investigation as to Mr. Warren's firearms trafficking that we're here on today was the fact that he committed a drive-by shooting and got arrested. So that's basically what stopped this whole thing. But, you know, I mean, this is a case where he's buying firearms at a place where it's easy to buy firearms, which is Montana. He's taking them down to the Oakland area. Well, there's no doubt about that and what he was doing and that he was a very bad guy. But the issue is what knowledge these women had to have to be involved as part of the conspiracy. Well, and then part of the conspiracy, too, or I guess not truly part of the conspiracy, but the facts of the case is Warren bragged openly that he could make so much money selling these firearms in California. I mean, he bragged openly to various witnesses in the case, and that's it, again, on page 6 of the supplemental excerpts of record. He was very brazen about it. He didn't keep this a secret. This wasn't, you know, don't tell anybody you're buying guns for me. Can we infer that these women then had knowledge of what he was up to? I think you can. It's a preponderance of the evidence. The court's record, the district court's record is reviewed for clear error. But, yes, I believe you can, Your Honor. And Judge Haddon didn't make any specific findings as to which people were involved that he was counting in this announcement, right? You know, he did not, and that's at tab 6. The sentencing transcript is at tab 6, page 7, is where he made his findings. He just says, The evidence is replete with confirmation the defendant was behind this idea for implementation of the conspiracy for which he stands. He was a hands-on leader. He recruited others. It doesn't specify the number. He did not specify the number of players, no, Your Honor. Any further questions? Is the argument in hand? Thank you. Mr. Ashley, we'll give you a minute if you'd like to take it. I've used my time, Your Honor. Okay, very good. Unless the court has additional questions. No questions. All right. Thank you very much. Thank you, both of you, for your arguments. The case has now been submitted. We'll proceed to the next case on the oral argument calendar, which is United States v. Williams.
judges: Fletcher B. , Tashima, Thomas